IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| BTG INTERNATIOINAL LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.  1:12-cv-00682 (AJT/TRJ) |
| | ) | |
| DAVID J. KAPPOS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.  Overview

On June 21, 2012, plaintiff BTG International, Ltd. ("plaintiff" or "BTG"), filed a complaint [Doc. No. 1] seeking "a judgment reversing the decision of the [Board of Patent Appeals and Interferences] and confirming its rights to a United States patent for its invention, as provided for by 35 U.S.C. § 145." Compl., ¶ 1. On October 15, 2012, the defendant, David J. Kappos, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office ("USPTO") filed his answer in which he, *inter alia,* asserts as an affirmative defense that BTG waived certain arguments in support of the patentability of its claims as result of the administrative proceedings before the USPTO and that this action was therefore limited to the patentability of only one claim, claim 102, selected by the Board of Patent Appeals and Interferences ("the Board") as representative of all of BTG's claims, and the only claim the Board considered in denying the patentability of all of BTG's claims. Answer, Doc. No. 11. Defendant also filed a Motion for Partial Summary Judgment Limiting This Action to the Representative Claim (the "Motion") [Doc. No. 27].

1

Central to the Motion is 37 C.F.R. § 41.37(c)(1)(iv) (2012) ("Rule 41.37").[1]   Under Rule

41.37, whenever a patent applicant fails to present to the Board any argument specifically

directed to the separate patentability of any specific patent claim or any separate group of claims,

the Board may, in its discretion, determine the patentability of all claims based solely on a

representative claim.  The Board invoked Rule 41.37 to reject the patentability of all of BTG's

claims based solely on claim 102, which it considered to be a "representative claim."

BTG opposes defendant's Motion principally on the grounds that the Board's truncated

analysis of BTG's claims based on Rule 41.37 does not restrict the scope of this action, since

under 35 U.S.C. § 145[2], this Court must determine BTG's entitlement to a patent "as specified in

*any of his claims* involved in the decision of the Board of Patent Appeals and Interferences."

---

[1] *Formerly* Rule 41.37(c)(1)(vii) (2007):

(iv) Argument. The arguments of appellant with respect to each ground of rejection, and the
basis therefor, with citations of the statutes, regulations, authorities, and parts of the Record
relied on. The arguments shall explain why the examiner erred as to each ground of rejection
contested by appellant. Except as provided for in §§ 41.41, 41.47 and 41.52, any arguments or
authorities not included in the appeal brief will be refused consideration by the Board for
purposes of the present appeal. Each ground of rejection contested by appellant must be argued
under a separate heading, and each heading shall reasonably identify the ground of rejection
being contested (e.g., by claim number, statutory basis, and applied reference, if any). For each
ground of rejection applying to two or more claims, the claims may be argued separately (claims
are considered by appellant as separately patentable), as a group (all claims subject to the ground
of rejection stand or fall together), or as a subgroup (a subset of the claims subject to the ground
of rejection stand or fall together). When multiple claims subject to the same ground of rejection
are argued as a group or subgroup by appellant, the Board may select a single claim from the
group or subgroup and may decide the appeal as to the ground of rejection with respect to the
group or subgroup on the basis of the selected claim alone. Notwithstanding any other provision
of this paragraph, the failure of appellant to separately argue claims which appellant has grouped
together shall constitute a waiver of any argument that the Board must consider the patentability
of any grouped claim separately. Under each heading identifying the ground of rejection being
contested, any claim(s) argued separately or as a subgroup shall be argued under a separate
subheading that identifies the claim(s) by number. A statement which merely points out what a
claim recites will not be considered an argument for separate patentability of the claim.

[2] *See infra* Section IV (Analysis), at 7.

(emphasis added). For this reason, BTG contends that in establishing his entitlement to a patent with respect any of his claims in this Court, as opposed to a direct appeal to the Federal Circuit under 35 U.S.C. § 141, it is not restricted to the administrative record or the evidence considered by the Board.

A hearing was held on USPTO's Motion on November 9, 2012, following which the Court took the Motion under advisement. By Order dated November 28, 2012, the Court denied the Motion [Doc. No. 46] and now issues this Memorandum Opinion in further support of its Order.

## II. Background[3]

BTG is the assignee and owner of U.S. Application No. 08/211,704, entitled "CDw52 Specific Antibody for Treatment of T-Cell Mediated Inflammation of the Joints," first filed on June 2, 1994 (the " '704 application"). On May 14, 2009, after a prolonged process of prosecution and claim amendments, the Patent Examiner issued his final decision as to the '704 application. In that decision, the Examiner rejected all of the claims[4] on various grounds applicable to different groups of claims, including indefiniteness, lack of enablement, inadequate written description, anticipation under prior art and obviousness. BTG appealed the Examiner's

---

[3] The facts stated herein are taken from the administrative record and the parties' statements of facts. Unless stated otherwise, the Court considers these facts undisputed solely for the purposes of the Motion.

[4] These claims, after amendments and cancellations, include claims 21, 24-27, 30-31, 35, 38, 41, 43, 44-48, 51-54, 57, 58, 60-66, 69-73, 76-79, 82-86, 89-92, 95-99, 102-104, & 107-110. As summarized by the Board in its Decision on Appeal, claims 38, 89, 95 and 102 "illustrate the appealed subject matter." Specifically, and briefly summarized without technical completeness, claim 38 specifies a composition consisting of the antibody CAMPATH -1H and a steroid or non-steroid anti-inflammatory agent. Claims 89 and 95 specify a method of treatment for "T-cell mediated inflammation of the joint synovium," one using CAMPATH-1H, the other using the CDw52 antibody; and claim 102 specifies a method of treatment for "rheumatoid arthritis" using CAMPATH-1H. Bd. App. Decision, Doc. No. 23, Ex. 11, at A1632-33.

3

decision to the Board.  On January 25, 2012, the Board reversed the Examiner's decision with

respect to all claims on all grounds, with one exception. The Board affirmed the Examiner's

obviousness rejection of all claims based on the category of "prior art references" referred to in

this Memorandum Opinion as the *Cobbold* references.[5]

        As described by BTG, the subject matter of BTG's claims that the Board rejected based

on the *Cobbold* references fall into two general categories: (1) those pertaining to rheumatoid

arthritis ("RA") ( Claims 102-104, and 107-110); and (2) those pertaining to T-cell inflammation

of the synovium joints ("T-cell mediated inflammation") (claims 21, 24-27, 30-31, 35, 38, 41,

43-48, 51-54, 57, 58, 60-66, 69-73, 76-79, 82-86, 89-92, and 95-99). Pl.'s Mot. Opp'n, p. 5; *see*

*also* Bd. App. Decision, Doc. No. 23, Ex. 8, at A1148-A1156.  Relying on Rule 41.37, the Board

first selected claim 102 (which pertains to RA) as the representative claim for its consideration of

the Examiner's obviousness rejection of all of BTG's claims based on the *Cobbold* references.

The Board then concluded that a preponderance of the evidence supported the Examiner's

conclusion that claim 102 was obvious in view of the *Cobbold* references. It then ruled without

further analysis, based on Rule 41.37, that "[t]he remaining claims fall with claim 102 as they

were not argued separately." Mem. Supp. Def.'s Mot., Doc. No. 28, ¶ 17.

---

[5] The *Cobbold* references include the following:

> Cobbold et al. (U.S. Patent No. 6, 056,956) and/or Waldman et al. (U.S. Patent No. 5,
> 846,534) and/or Clark et al.(EP 0 328404)  in view of Mathieson et al. (NEJM 323: 25-
> 54, 1990), the definition of "drug" as set forth in Webster's Ninth New Collegiate
> Dictionary, Cobbold et al. (Seminars in Immunology 2:377-387, 1990), Herzog at al.
> (Lancet 2: 1461-1462, 1987), Horn, et al. (Eur J. Immunol. 1888:881-888, 1988), and the
> conventional use of immunosuppressive  and /or anti-inflammatory agents in treating T
> cell mediated inflammation of joints at the time the invention was made as disclosed on
> page 5 of the instant specifications (the "Cobbold obviousness rejection"). A820; A835-
> 839.

Mem. Supp. Def.'s Mot., ¶ 4.

On March 26, 2012, BTG petitioned the Board for rehearing. BTG pointed out that in its briefs filed with the Board it had argued the patentability of its claims according to the claim groupings as they appeared in the Examiner's Final Decision; and for that reason, before BTG addressed the Examiner's obviousness rejection of all its claim based on the *Cobbold* references collectively, it had presented arguments for the separate patentability of claims pertaining to T-cell mediated inflammation, including why the Examiner erred in finding those particular claims obvious based on several of the references included in the *Cobbold* references, including *Waldman*,[6] *Mathieson*[7] and *Dictionary*.[8] BTG therefore argued that the Board's affirmance of the Examiner's obviousness rejection of the claim 102 based on the *Cobbold* references did not address the merits of BGT's arguments concerning its claims pertaining to T-cell mediated inflammation, particularly since the Board reversed the Examiner's obviousness rejection of the claims pertaining to T-cell mediated inflammation based on *Waldman, Mathieson,* and *Dictionary.*[9]

On April 25, 2012, the Board denied BTG's request for rehearing principally on the grounds that in the section of BTG's appellate briefings dealing with the *Cobbold* references collectively:

> we [the Board] were presented with no argument specifically directed to any particular claim, or to any separate group of claims, and we therefore selected

---

[6] *See supra* note 5.

[7] *Id.*

[8] *Webster's Ninth New Collegiate Dictionary, Merriam-Webster, Inc.* (Springfield, MA 1990).

[9] BTG did concede that in the section of its brief dealing with the *Cobbold* references, it "did not break down their arguments into headings for specific subgroups of claims" and that "a different approach may have simplified the appeal in the eyes of the Board," recognizing that its earlier arguments as to the separate patentability of the claims pertaining to T-cell mediated inflammation "were apparently lost in the forest of a record." Bd. App. Decision, Doc. No. 23, Ex. 11, at A1677.

claim 102 as representative of the rejected claims, as provided for by 37 C.F.R. §
41.37 (c)(1)(vii). As [BTG's] arguments did not persuade us that the Examiner
erred in concluding that claim 102 would have been obvious to an ordinary
artisan, we affirmed the rejection as to all of the rejected claims, again as provided
by 37 C.F.R. § 41.37(c)(1)(vii).

Bd. App. Decision, Doc. No. 23, Ex. 11, at A1702. The Board also rejected BTG's contention

that "selecting claim 102 as representative of the rejected claims amounted to overlooking or

misapprehending any argument [BTG] made regarding treatment of T-cell mediated

inflammation of the joint synovium[,]" since "it is undisputed on this record that rheumartoid

arthritis is in fact a T-cell mediated disorder of the joint synovium." *Id.* at A1703-04. It also

considered to a certain extent the merits of BTG's claims other than claim 102. *See id.* at A1704-

05.   On June 21, 2012, BTG filed this action.[10]

### III. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine

dispute as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986); *Evans v. Techs. Apps. & Serv. Co*, 80 F.3d 954, 958-59 (4th Cir. 1996).   The party

seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex

Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   A genuine dispute of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248.

---

[10] In its one count Complaint, BTG claims that he Board (1) "failed to establish a prima facie
case of obviousness"; (2) "failed to give proper consideration to evidence of record submitted by
[BTG] and demonstrating the unpredictable nature of the claimed methods; and (3) "applied
incorrect standards in ascertaining whether the claims of the '704 application were obvious in
view of the cited references." Compl., ¶ 14. Based on these allegations, BTG seeks the entry of
judgment (1) reversing the Board's April 25, 2012 Decision for Rehearing; (2) declaring that
BTG is entitled to receive a patent for the invention claimed in the '704 application and
"authorizing the [defendant] to issue such patent in compliance with the requirements of law."

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific fats showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007). However, "unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment." *Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994).

### IV. Analysis

Title 35, United States Code, Section 145 ("§ 145") provides in pertinent part as follows:

> An applicant dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal under section 134(a) may, unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Director in the United States District Court for the Eastern District of Virginia. . . . The court may adjudge that such applicant is entitled to receive a patent for his invention, as specified in any of his claims involved in the decision of the Board of Patent Appeals and Interferences, as the facts in the case may appear and such adjudication shall authorize the Director to issue such patent on compliance with the requirements of law.

As authorized in § 145, this Court may adjudge whether BTG is entitled to a patent on "any of the claims involved in" the Board's decision. The first issue therefore is whether all of BGT's claims, or just claim 102, were "involved in" the Board's decision. The Court finds that all of BTG's claims were clearly "involved in" the Board's decision. The Examiner rejected all of BTG's claims involved in this action, not just claim 102; and the Board affirmed the Examiner's obviousness rejection of all of BGT's claims, not just claim 102, albeit based on claim 102. The Board therefore adjudicated the patentability of all of BTG's claims; and all of those claims are therefore within the scope of this action filed pursuant to § 145.

The USPTO does not appear to dispute that all of BTG's claims are within the scope of this action. Rather, USPTO contends that in determining the patentability of all of BTG's claims, this Court may not consider "new evidence" on "new issues" and that any argument not considered by the Board based on Rule 41.37 constitutes a "new issue." Based on these positions, the USPTO contends that this action is restricted to the patentability of claim 102 since BTG waived all arguments for the patentability of BTG's other claims, separate and apart from claim 102, when it failed to present those arguments to the Board as required by Rule 41.37.

The Court concludes that the scope of this action is not affected in any way by Rule 41.37, the Board's actions based on Rule 41.37 or any conduct on the part of BTG that authorized the Board to act as it did based on Rule 41.37. By way of summary, Rule 41.37 does not operate to cancel or exclude claims for the purpose of determining their patentability, either before the Board or in this action. Rather it, in effect, authorizes an administrative consolidation of all claims into a single representative claim for the sole purpose of deciding the patentability of all claims before the Board. This action is not part of that now concluded administrative

process; it is a separate, independent action.[11] Rule 41.37 therefore provides no basis to restrict either the claims or the evidence that may be considered before this Court, given the broad, unqualified language of § 145, as construed by the United States Supreme Court in *Kappos v. Hyatt*, 132 S. Ct. 1690 (2012). For similar reasons, the Board's exercise of discretion under Rule 41.37 does not result in a waiver by BTG of its rights under § 145, nor does the record before the Court establish that BTG engaged in conduct that constitutes, as a matter of law, a waiver of its rights under §145.

In *Hyatt*, the Supreme Court considered (1) whether there are any limitations on a patent applicant's ability to introduce new evidence before the district court in an action filed pursuant to § 145; and (2) what standard of review the district court should apply when considering new evidence. *Id.* at 1692. The Supreme Court first concluded that "there are no evidentiary restrictions beyond those already imposed by the Federal Rules of Evidence and the Federal Rules of Civil Procedure." *Id.* at 1694. As to the standard of review, the Court held that "if new evidence is presented on a disputed question of fact, the district court must make *de novo* factual findings that take account of both the new evidence and the administrative record before the [US]PTO." *Id.* at 1701. In deciding what weight to give such new evidence, the district court may consider, however, whether the patent applicant had an opportunity to present evidence to the USPTO. *Id.* at 1700.

---

[11] The USPTO argues that Rule 41.37 operates to restrict a plaintiff in a § 145 action in the same way that failure to argue an issue in a trial court precludes such an argument on appeal. The difference, of course, as the Supreme Court recognized in *Hyatt*, is that this action is not a technical appeal from the Board or the administrative process but a new action. For the same reason, the Federal Circuit's decision in *In re Lovin*, 652 F.3d 1349 (Fed. Cir. 2011), which restricted the review of the Board's decision based on a failure to comply with Rule 41.37, has no application to this action.

On its way to reaching these conclusions, the Supreme Court was confronted with many of the same arguments and concepts imbedded in the USPTO's position in this action, including traditional administrative law principles governing judicial review and the admissibility of new evidence, the long-standing principle of administrative exhaustion, and deference to agency authority and expertise. *See generally*, Mem. Supp. Def.'s Mot., at 14-29. Based on the language of § 145, the Supreme Court categorically rejected all of these concepts as restrictions on a district court's scope of review. *Hyatt*, 132 S. Ct. at 1696 ("We reject the [USPTO's] contention that background principles of administrative law govern the admissibility of new evidence and require a deferential standard of review in a § 145 proceeding."); at 1698 (a § 145 action "is not a technical appeal from the Patent-Office . . . confined to the case as made in the record of that office, but is prepared and heard upon all competent evidence adduced and upon the whole merits."); at 1696 ("the principles of administrative exhaustion do not apply in a §145 proceeding."); at 1697 ("we are not persuaded by the [USPTO's] suggestion that § 145 proceedings are governed by the deferential principles of agency review."); at 1696, 1700 (rejecting that a district court should admit evidence only if the proponent of the evidence had no reasonable opportunity to present it to the USPTO in the first instance.); at 1700 ("we conclude that a district court conducting a §145 proceeding may consider 'all competent evidence adduced' and is not limited to considering new evidence that could not have been presented to the [US]PTO."); at 1695-96 (rejecting the argument that the district court should overturn the USPTO's findings only if new evidence clearly establishes that the agency erred.). Based on the rulings in *Hyatt*, this Court rejects the USPTO's position that Rule 41.37 grafts limitations upon the scope of review in a § 145 proceeding.

The USPTO argues that while BTG may submit "new evidence" on the issues considered by the Board to reject a patent application, it may not submit new evidence on "new issues." "The [*Hyatt v.*] *Kappos* decision's permission to applicants to present new evidence to this Court on disputed factual questions does not extend to permitting the applicant to raise new issues or arguments not made before the Board." Mem. Supp. Def.'s Mot., at 22 (*citing DeSeversky v. Brenner,* 424 F.2d 857, 858 (D.C.Cir.1970)). Under this view, "new evidence" and "new issues" are "mutually exclusive." Def.'s Reply Mem. in Supp., Doc. No. 44, at 5. Moreover, the "issue" for the purposes of a § 145 action is not "simply the statutory basis for the rejection, *i.e.,* obviousness, anticipation, lack of written description, etc. Rather, the 'issues' are the arguments that [were] raised . . ." before the Board in response to the obviousness objection. *Id.* at 8. For these reasons, the USPTO claims this Court's consideration of the obviousness issue, based on the *Cobbold* references, is limited to the specific reasons the Board articulated for rejecting BTG's claims. Because the Board considered only "general unpredictability arguments" applicable to all of BTG's claims, evaluated in terms of the subject matter of claim 102 only, the USPTO seeks to likewise restrict the scope of this action. *Id.* at 5, 10.

What the USPTO calls a "new argument" is nothing more than facts not considered by the Board, applied to specific claims other than claim 102. Under *Hyatt,* a plaintiff in a § 145 action is entitled to present all evidence admissible under the rules of evidence[12] as to all claims,

---

[12] Under Fed. R. Evid. 402, "all relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by others prescribed by the Supreme Court pursuant to statutory authority." None of these listed exceptions includes Rule 41.37. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The "facts of consequence" in this action are determined with reference to the claim set forth in the Complaint. That claim is BTG's entitlement to a patent for its invention, as specified in any of

whether or not that evidence was first presented to the Board. For this reason, Rule 41.37 cannot have in this action the exclusionary consequences claimed by the USPTO. In effect, Rule 41.37 allowed the Board to assume that BTG presented no facts to support the patentability of its claims pertaining to T-cell mediated inflammation other than those pertaining to RA, as specified in claim 102. What BTG now proposes to present in this action is additional facts, not considered by the Board, supporting the patentability of its claims other than claim 102. To exclude such evidence would run afoul of the core holding of *Hyatt* - that all competent evidence concerning claims involved in the Board's decision may be considered. Moreover, the USPTO's position effectively displaces and expands the limited remedy, sanctioned in *Hyatt*, for an applicant's failure to present facts to the Board—that a district court may consider whether the patent applicant had an opportunity to present such evidence to the USPTO in deciding what weight to give such new evidence.[13] In the end, USPTO's position necessarily reduces to one of administrative exhaustion, which *Hyatt* categorically rejects as an impermissible limitation on a § 145 proceeding.[14] 132 S. Ct. at 1696.

---

the claims involved in the decision of the Board; and all evidence that makes that claim "more or less probable" is therefore relevant and admissible, subject to the evidentiary rules of exclusion.

[13] For this reason, the Supreme Court has necessarily rejected the USPTO's position that a proper reading of § 145 would limit the introduction of new evidence in § 145 actions to where the applicant did not have a reasonable opportunity to present such evidence to the Board. *See* Pl.'s Mem. Opp'n, at 6.

[14] In rejecting the USPTO's concerns related to allowing new factual disputes to be raised in a § 145 proceeding, the Supreme Court in *Hyatt* observed:

> The Director warns that allowing the district court to consider all admissible evidence and to make *de novo* findings will encourage patent applicants to withhold evidence from the PTO intentionally, with the goal of presenting evidence for the first time to a nonexpert judge. We find that scenario unlikely. An applicant who pursues such a strategy would be intentionally undermining his claims before the PTO on the speculative

The ultimate issues in this case, as framed by the complaint, are precisely the same as those presented to the USPTO in BTG's patent application: the patentability of BTG's claims and its entitlement to a patent. The more specific issues are also the same, viz., whether BTG's claims should be rejected on the basis of obviousness in light of the *Cobbold* references. The Examiner and the Board both ruled on these issues of patentability. While it is true that the Board arguably decided that issue based solely on its consideration of claim 102 (although it appears to go further in its decision on BTG's Request for Rehearing), the Board's decision to proceed in that fashion did not eliminate the need to determine the patentability of all other claims; and the Board, in fact, did precisely that.

Nor on this record can the USPTO's position be sustained based on traditional notions of waiver. Waiver is generally defined as the intentional relinquishment of a known right. *See U.S. v. Stout*, 415 F.2d 1190, 1192 (4th Cir. 1969). First, as discussed above, Rule 41.37 does not operate to eliminate or cancel claims, either before the USPTO or this Court, or any issues of patentability involved in those claims.[15]   It simply restricts what facts the Board will consider. Likewise, the Board's decision to exercise its discretion under Rule 41.37 and limit its consideration of BTG's claims does not constitute a waiver on the part of BTG of its rights under § 145. Finally, the record before the Court does not establish as a matter of law that BTG engaged in conduct that constitutes a waiver of its right to seek a patent on its claims separate and apart from claim 102. There is also no evidence that BTG withdrew, abandoned, or

---

chance that he will gain some advantage in the § 145 proceeding by presenting new evidence to a district court judge.

132 S. Ct. at 1700 (internal citations omitted).

[15] For this reason, this case does not involve the situation addressed in *DeSeversky*, 424 F.2d at 858, where the applicant raised a new claim never presented to the Patent Office.

13

cancelled, or intended to withdraw, abandon, or cancel, any claims before the Board, or to restrict its ability to obtain a patent in a § 145 action.[16] Nor is there any evidence that BTG intentionally suppressed evidence, misrepresented the scope of its evidence, or engaged in any other conduct that might estop it from exercising its rights under § 145. *See Hyatt*, 132 S. Ct. at 1702 (Sottomayor, J., concurring).[17]

## V. Conclusion

For the above reasons, the Court concludes, as a matter of law, that the scope of this action is not limited to the patentability of claim 102 and that BTG is entitled to seek a patent as to any of its claims involved in the Board's decision, separate and apart from claim 102, and to present all "competent evidence" in support of the patentability of those claims. The USPTO's

---

[16] At most, the record suggests that BTG, through negligence or mistake, failed to present the evidence to the Board in the required format, particularly since it was the Board's decision, not BTG's, to consider only claim 102, and BTG had argued separately in its briefs the patentability of its claims other than claim 102.

[17] Incorporating into this action the preclusive effect of the USPTO's internal rules, such as Rule 41.37, would also have the potential to not only further complicate this action, but also to undermine its primary purpose to allow a disappointed patent applicant an unfettered opportunity to supplement the administrative record. For example, in this case, BTG disputes that it was required to comply with Rule 41.37 or if it was, it substantially did so; and in any event, its own compliance should have been excused given the Examiner's own purported violations of the USPTO's rules when it issued its Final Decision on the *Cobbold* references without separately addressing the patentability of each claim. It also appears to argue that claim 102 was not, in fact, representative of its claims pertaining to T-cell mediated inflammation, especially after the Board reversed the Examiner with respect to those claims based on *Waldman, Mathieson,* and *Dictionary*. Pl.'s Mot. Opp'n, at 5-6. For these reasons, BTG essentially argues that the Board abused its discretion under Rule 41.37. *Id.* Recognizing the preclusive effects of Rule 41.37 for the purposes of this action would likely require this Court to first determine a whole range of issues with respect to now concluded administrative proceedings, including whether Rule 41.37 applied, whether it was sufficiently complied with, whether the Board limited its consideration to claim 102, and whether the Board abused its discretion. There is nothing about the purpose of this action, as explained in *Hyatt*, that would counsel in favor of such a frolic and detour into the administrative record.

14

Motion for Partial Summary Judgment Limiting This Action to the Representative Claim [Doc.

No. 27] is DENIED.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
December 6, 2012

15